IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GYDA,                           :
                                        :
              Plaintiff,                 :        CIVIL ACTION
                                        :
       v.                                :
                                        :
FEDERAL BUREAU OF                        :        NO. 13-7591
INVESTIGATION CRIME                      :
LABORATORY, et al.,                      :
                                        :
              Defendants.

## ORDER

AND NOW, this _____ day of_____, 2014,
on consideration of the federal defendants' motion to dismiss, and any response
thereto, it is hereby ORDERED that the motion is GRANTED.

All claims against Federal Bureau of Investigation Crime Laboratory, United
States Department of Energy Office of Science, and Oak Ridge Institute for Science
and Education, are DISMISSED with prejudice.

BY THE COURT:

_____
NORMA L. SHAPIRO
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GYDA,     :
         :
   Plaintiff,    :  CIVIL ACTION
         :
  v.        :
         :
FEDERAL BUREAU OF   :  NO. 13-7591
INVESTIGATION CRIME   :
LABORATORY, et al.,    :
         :
   Defendants.

## MOTION TO DISMISS
## BY FEDERAL DEFENDANTS

   Federal defendants Federal Bureau of Investigation Crime Laboratory, United States Department of Energy Office of Science, and Oak Ridge Institute for Science and Education move under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss all claims against them with prejudice. The reasons for this motion are set forth in the attached memorandum of law.


       Respectfully submitted,

       ZANE DAVID MEMEGER
       United States Attorney


       MARGARET L. HUTCHINSON
       Assistant United States Attorney
       Chief, Civil Division


       MARK J. SHERER
       Assistant United States Attorney
       615 Chestnut St, Suite 1250
       Philadelphia, Pennsylvania 19106
       (215) 861-8445
Dated: June 27, 2014    mark.sherer@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MICHAEL GYDA,                        :
                                     :
          Plaintiff,                 :          CIVIL ACTION
                                     :
     v.                              :
                                     :
FEDERAL BUREAU OF                    :          NO. 13-7591
INVESTIGATION CRIME                  :
LABORATORY, et al.,                  :
                                     :
          Defendants.                :

## MEMORANDUM OF LAW
## IN SUPPORT OF THE FEDERAL DEFENDANTS' MOTION TO DISMISS

**I.      Summary**

In his Amended Complaint, pro se plaintiff Michael Gyda asserts the legal

conclusion, unsupported by factual allegations, that the eligibility guidelines for

postgraduate applicants to a Visiting Scientist Program (VSP) at the FBI Laborato-

ry violate the Age Discrimination in Employment Act (ADEA), because some appli-

cation materials state that postgraduates should apply within three years of receiv-

ing their degree. Although Gyda never applied to the VSP, he now seeks a court

order directing the defendants[1] to admit him to the VSP and to pay him various

damages and costs that are not legally available in an ADEA action against the

federal government or its agencies.

All claims against the federal defendants in the Amended Complaint must be

dismissed under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Further,

---

[1] The federal defendants are Federal Bureau of Investigation Crime Laboratory,
United States Department of Energy Office of Science, and Oak Ridge Institute for
Science and Education. However, the proper defendant in a federal sector ADEA
discrimination case is the head of the relevant federal agency, in his representative
capacity. 29 C.F.R. § 1614.201(a); Adams v. EEOC, 932 F. Supp. 660, 664 n.3 (E.D.
Pa. 1996). Thus, should the Court permit any ADEA claim to proceed, the Attorney
General and Secretary of Energy should be substituted as the federal defendants.

because Gyda cannot bring any cognizable claims against the federal defendants, the dismissal should be with prejudice and without leave to amend.

*First*, Gyda appears to assert a "disparate impact" claim under the ADEA, based on his factually unsupported assumption that a three-year timeframe for postgraduate candidates to apply to the VSP will result in no eligible postgraduate applicants who are 40 years of age or older. But an ADEA claim against the federal defendants must be brought under the federal sector ADEA, 29 U.S.C. § 633a, which, unlike its private sector counterpart, does not authorize a disparate impact theory. Gyda's claim must therefore be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Moreover, even were the Court to entertain a disparate impact theory, Gyda's claim is based on bare legal conclusions and speculative assertions, and the Amended Complaint must be dismissed for failure to plead specific facts that would state a plausible disparate impact claim against the federal defendants. Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

*Second*, Gyda never applied to the VSP. But to the extent that the Amended Complaint could be read to assert a "disparate treatment" claim, it must be dismissed for failure to state a claim on which relief may be granted, as Gyda fails to plead specific facts that would state a plausible disparate treatment claim against the federal defendants. Fed. R. Civ. P. 12(b)(6); Iqbal, 556 U.S. at 678-69.

*Third*, any claims against the federal defendants must also be dismissed because Gyda failed properly to exhaust administrative procedures, or to comply with the "by-pass" procedures available under the ADEA, before he filed suit against the federal defendants. Thus, even were the Court to find that Gyda has stated a cognizable claim, or permit him to replead to state one, the Court must nonetheless dismiss any potential ADEA claims against the federal defendants under Rule 12(b)(6).

*Finally*, the Amended Complaint improperly includes demands for a jury trial, compensatory, liquidated, non-economic, and punitive damages, and attorneys' fees – none of which are available in an ADEA claim against the federal defendants.

## II.   Factual Allegations and Background

### A.   Plaintiff Michael Gyda

According to the Amended Complaint, Gyda is 55 years old and received a Ph.D. in 2007. ¶ 21.[2] He has fifteen years of adjunct faculty experience at Philadelphia-area schools. ¶ 23. He has unsuccessfully sought positions at private forensic laboratories and state crime laboratories. ¶¶ 25-29.

### B.   The Visiting Scientist Program

The VSP at the FBI Laboratory in Quantico, Virginia is a training/fellowship program designed to give early career scientists an opportunity to obtain unique work experience as well as an opportunity to enhance their professional development. Compl. Ex. 4.[3] The program invites applications from current students, postgraduates, and faculty members. Compl. Ex. 1. Some VSP application materials state that postgraduates should apply within three years of receiving their degree.[4] ¶ 20; Compl. Exs. 1-2. Gyda first learned of the VSP around April 13, 2013. ¶ 25.

---

[2] All "¶" references are to the paragraphs of the Amended Complaint, ECF No. 5.

[3] The Amended Complaint incorporates by reference the exhibits to the initial complaint. On a motion to dismiss, the Court may consider any exhibits attached to the complaint, matters of public record, and authentic documents on which the complaint is based. PBGC v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] The Amended Complaint alleges a three-year period, ¶ 20, which is also stated on some VSP materials. Compl. Exs. 1-2. The eligibility guideline for postgraduates is actually five years. See Compl. Ex. 4. Because Gyda alleges that he received his degree six years ago, ¶ 21, this difference does not affect his claims, so for purposes of this motion, the federal defendants will refer to the alleged three-year period.

### C.     Gyda's EEO complaints about the VSP application

Gyda has never applied to the VSP or contacted the FBI Laboratory to discuss his interest in the program. However, in April 2013, Gyda contacted personnel in the Equal Employment Opportunity (EEO) office at defendant Oak Ridge Associated Universities (ORAU), to complain about the VSP application's stated eligibility guidelines for postgraduates. ¶¶ 10-12; Compl. Exs. 3-4. ORAU is not a federal agency, but a private contractor for the Department of Energy. ¶ 7. On September 5, 2013, Gyda filed a charge against ORAU with the EEOC in Philadelphia, alleging age discrimination in connection with the VSP application process. ¶ 14; Compl. Ex. 5. On September 24, 2013 the EEOC dismissed Gyda's charge and informed him of his right to file a district court action against ORAU. ¶ 15; Compl. Ex. 5.

Later, on October 11, 2013, Gyda contacted an EEO counselor at the FBI's Philadelphia Field Office. ¶ 17; Compl. Ex. 6. On November 26, 2013, the counselor notified Gyda of his right to file a formal complaint. ¶ 18; Compl. Ex. 6. On December 7, 2013, Gyda filed a formal complaint with the FBI EEO office in Washington, D.C. ¶ 19; Compl. Ex. 6. In his FBI complaint, Gyda alleged that the date on which the most recent alleged discrimination took place was April 16, 2013. Compl. Ex. 6.

Gyda filed this action on December 24, 2013. ECF No. 1. When he filed this action, Gyda had not exhausted the administrative process he had begun with his formal complaint to the FBI EEO office, nor had Gyda provided the EEOC Office of Federal Operations in Washington, D.C. with written notice of intent to sue any of the federal defendants and then waited the required 30 days before filing.

## III.   Legal Standards

### A.     Dismissal under Federal Rule of Civil Procedure 12(b)(1)

A federal court must dismiss any claim over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction

4

and the law presumes that a cause lies outside this limited jurisdiction. Kokkonen v. Guardian Life Ins., 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing that the federal courts have subject-matter jurisdiction at all stages of the litigation. Packard v. Provident Nat'l Bank, 994 F.2d 1039, 1045 (3d Cir. 1993). No presumption of truth attaches to the plaintiff's allegations, and disputed material facts will not preclude the court from evaluating the merits of jurisdictional claims. Mortensen v. First Fed. Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).

### B.    Dismissal under Federal Rule of Civil Procedure 12(b)(6)

A federal court must dismiss an action for failure to state a claim on which relief can be granted under Rule 12(b)(6) if the complaint fails to plead enough facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007), abrogating Conley v. Gibson, 355 U.S. 41 (1957). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678. The plausibility standard is not a probability requirement, but it asks for more than the mere possibility that a defendant has acted unlawfully. Id. A plaintiff who wishes to survive a Rule 12(b)(6) motion must present factual allegations that are sufficiently detailed "to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. Iqbal, 556 U.S. at 662. Legal conclusions and bare recitals of a cause of action, supported by mere conclusory statements will not withstand a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 201 (3d Cir. 2009).

## IV.    Argument

Claims of age discrimination under the ADEA arise under two distinct theories: "disparate treatment" and "disparate impact." Hazen Paper Co. v. Biggins, 507 U.S. 604, 609 (1993). Gyda's Amended Complaint must be dismissed for failure to state a cognizable claim against the federal defendants under either theory.

### A.    The Amended Complaint does not state a cognizable "disparate impact" claim against the federal defendants.

Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." Hazen Paper, 507 U.S. at 609. Though not clear, the Amended Complaint appears to assert (without alleging supporting facts) that the three-year timeframe for postgraduates to apply to the VSP disparately impacts postgraduates 40 years or older, because older applicants are less likely to have received their degree within the prior three years. Any purported disparate impact claim must fail for several reasons.

#### 1.    The federal sector ADEA neither waives sovereign immunity to authorize, nor implies the existence of, a "disparate impact" claim against the federal defendants.

To the extent Gyda asserts a disparate impact claim, it must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) because the ADEA neither waives sovereign immunity to authorize, nor implies the existence of, a disparate impact claim against the federal defendants.[5] See 29 U.S.C. § 633a; Anderson v. Duncan, __ F. Supp. 2d __, 2013 WL 5429274, *13-17 (D.D.C. Sep. 30, 2013); Allard v. Holder, 840 F. Supp. 2d 269, 278-80 (D.D.C. 2012); Silver v. Leavitt, 2006 WL 626928, *13 (D.D.C. Mar. 13, 2006).

---

[5] Because the VSP is a federal opportunity, ¶ 10, the federal sector ADEA applies to Gyda's claims. See Forman v. Small, 271 F.3d 285, 296 (D.C. Cir. 2001).

The United States and its agencies may not be sued without its consent, and that consent is a prerequisite for jurisdiction. FDIC v. Meyer, 510 U.S. 471, 475 (1994); United States v. Mitchell, 463 U.S. 206, 212 (1983). Any waiver of sovereign immunity cannot be implied but must be definitively and unequivocally expressed, and it cannot be enlarged beyond the boundaries that the statutory language plainly requires. United States v. Nordic Vill., Inc., 503 U.S. 30, 34 (1992); Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990). Any waiver of immunity must be construed strictly in favor of the sovereign. Ruckelshaus v. Sierra Club, 463 U.S. 680, 685 (1983). The court must resolve all ambiguities in favor of preserving the government's immunity from suit. Lane v. Pena, 518 U.S. 187, 192 (1996).

Congress originally enacted the ADEA in 1967 to cover actions against private employers, and expanded the scope of the statute in 1974 to include state and local governments and federal government employees. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 68 (2000); Lehman v. Nakshian, 453 U.S. 156, 166-67 (1981). But while Congress brought state and local governments within the ADEA's reach by simply expanding the term "employer" in the private sector ADEA, it added an entirely new, more limited section, § 15 (codified at 29 U.S.C. § 633a), to address age discrimination in federal employment, thus "deliberately prescrib[ing] a distinct statutory scheme applicable only to the federal sector." Lehman, 453 U.S. at 166-67; see 29 U.S.C. § 633a(f) (federal sector "shall not be subject to" other ADEA provisions).

The federal sector ADEA "differs sharply" from its private-sector counterpart, and "is couched in very different terms." Gomez-Perez v. Potter, 553 U.S. 474, 486 (2008). Unlike the private sector ADEA, which is patterned after Title VII and contains a list of specific prohibited practices, id., the federal sector provision simply states that "[a]ll personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be free from any discrimination

7

based on age." 29 U.S.C. § 633a(a). The requirement that employment decisions by the federal government be made free from discrimination "based on age" prohibits intentional age discrimination – i.e., disparate treatment claims – not facially neutral practices which may have the effect of a disparate impact on employees over 40 years of age. That is, the text of § 633a(a) does not imply that Congress contemplated a waiver of sovereign immunity with respect to disparate impact claims, as opposed to claims of intentional discrimination against an individual – much less expressly and unambiguously waive such immunity.[6] See Allard, 840 F. Supp. 2d at 280 ("the federal section's language is simple and plain, and neither expressly nor impliedly authorizes disparate-impact claims.").

---

[6] The federal sector ADEA's legislative history confirms that Congress did not intend to waive sovereign immunity and create a cause of action for disparate impact claims against the government. Rather, Congress intended to prohibit intentional discriminatory treatment by the government because of an employee's age. See 119 Cong. Rec. 2648, 28644 (1973) (statements of Sen. Bentsen) (noting concerns with federal employers pressuring older employees to retire); 120 Cong. Rec. 4706-07 (1974) (statement of Sen. Church) (citing concern for older employees "singled out in some agencies for an early exit from their Government jobs."); H.R. Rep. No. 93-913 (1974), 1974 U.S.C.C.A.N. 2811, 2849 (addressing intentional age discrimination); see also George O. Luce, Why Disparate Impact Claims Should Not Be Allowed Under the Federal Employer Provisions of the ADEA, 99 Nw. U.L. Rev. 437, 465-69 (2004) ("the sponsors of the ADEA federal sector provisions seemed to deliberately avoid saying anything that could possibly be construed as endorsing § 633a disparate impact liability.").

The federal sector ADEA also starkly contrasts with Congress's extension, three years earlier, of Title VII's protection to federal employees, 42 U.S.C. § 2000e-16(a). In extending Title VII, Congress expressed its concern with disparate impact, citing "systematic discrimination" resulting in a "disproportionate distribution of minorities and women throughout the Federal bureaucracy." H.R. Rep. No. 92-238, at 23 (1971), 1972 U.S.C.C.A.N. 2137, 2158-59. But while Congress embraced a disparate impact theory for Title VII, it chose not to apply it to the federal sector ADEA. See Allard, 840 F. Supp. 2d at 280 ("Congress, amending the ADEA after the Supreme Court [in Griggs] had already recognized Title VII supported disparate-impact claims, could have copied the Title VII language to the federal section. More simply, when Congress redefined the term "employer" to include state and local government employers, Congress could have included federal employers as well. It didn't[.]").

2.   **The Supreme Court's interpretation of the private sector ADEA does not support a disparate impact theory under the federal sector ADEA.**

In <u>Smith v. City of Jackson</u>, 544 U.S. 228 (2005), the Supreme Court found an implied disparate impact theory under the language of the <u>private</u> sector ADEA, which does not apply to federal sector employers. <u>Id.</u> at 232-40. Specifically, the Court based its holding on § 4(a)(2) of the private sector ADEA, 29 U.S.C. § 623(a)(2), the language of which it found is identical to § 703(a)(2) of Title VII, under which the Court had previously found a disparate impact theory. <u>Smith</u>, 544 U.S. at 233-34 (citing <u>Griggs v. Duke Power Co.</u>, 401 U.S. 424 (1971)).

To date, after <u>Smith</u>, neither the Supreme Court nor the Third Circuit (nor any district court in this Circuit) has addressed whether the federal sector ADEA authorizes disparate impact claims against a federal employer.[7] But the majority of cases directly to address the question have held that <u>Smith</u>'s holding is limited to the private sector ADEA and that its federal sector counterpart does not authorize a disparate impact claim against the government.[8] See <u>Anderson</u>, 2013 WL 5429274, at *13-17; <u>Allard</u>, 840 F. Supp. 2d at 278-80 & n.13; <u>Silver</u>, 2006 WL 626928, at *13; see also <u>Aliotta v. Bair</u>, 614 F.3d 556, 562 n.4 (D.C. Cir. 2010); <u>AFGE TSA Local 1 v. Hawley</u>, 481 F. Supp. 2d 72, 91-92 (D.D.C. 2006); <u>Evans v. Atwood</u>, 38 F. Supp. 2d 26, 28-30 (D.D.C. 1999).

As these cases explain, <u>Smith</u> implied a disparate impact theory from § 4(a)(2) of the private sector ADEA, under which an employer may not "limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status

---

[7] Prior to <u>Smith</u>, the Third Circuit had found a disparate impact theory was <u>not</u> available. <u>DiBiase v. SmithKline Beecham Corp.</u>, 48 F.3d 719, 732-34 (3d Cir. 1995).
[8] The district court cases suggesting otherwise are examined and distinguished at length in <u>Anderson</u>, 2013 WL 5429274, *13-14 & n.14, and <u>Allard</u>, 840 F. Supp. 2d at 279-80 & nn.12-16.

as an employee, because of such individual's age." [9] 29 U.S.C. § 623(a)(2). <u>See</u> <u>Smith</u>, 544 U.S. at 233-34. The public sector ADEA, by contrast, simply prohibits discrimination "based on age," 29 U.S.C. § 633a(a), was <u>not</u> copied verbatim from Title VII, <u>cf.</u> <u>Smith</u>, 554 U.S. at 233-34, and cannot support a disparate impact cause of action.[10] <u>Allard</u>, 840 F. Supp. 2d at 279-80.

In sum, the significant limitations of sovereign immunity, and the significant differences between the federal sector ADEA and its private sector counterpart, compel the conclusion that a disparate impact claim is not legally cognizable against the federal government. To the extent Gyda relies on a disparate impact claim, it must be dismissed with prejudice under Rule 12(b)(1). [11]

### B.   The Amended Complaint does not allege facts that would support a disparate impact claim against the federal defendants.

Even if a disparate impact theory could be found under the federal sector ADEA, the Amended Complaint must still be dismissed under Rule 12(b)(6) because it fails to state a plausible disparate impact claim against the federal defendants.

"To establish a prima facie case under the disparate impact model, the plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact." <u>Massarsky v. Gen. Motors Corp.</u>, 706 F.2d 111, 120 (3d Cir. 1983). "It is not sufficient for a plaintiff simply to allege that there is a disparate

---

[9] Moreover, even if <u>Smith</u> applied to the federal sector, its holding, based on § 4(a)(2), would not apply to (prospective) applicants like Gyda. <u>See</u> <u>Smith</u>, 544 U.S. at 266 (O'Connor, J., concurring) ("Section 4(a)(2), of course, does not apply to 'applicants for employment' at all – it is only § 4(a)(1) that protects this group.").

[10] <u>Smith</u>'s holding also relied on EEOC regulations that interpret the private sector ADEA to permit a disparate impact claim. 544 U.S. at 239-40 (citing 29 C.F.R. § 1625.7). But even after <u>Smith</u>, no EEOC regulations interpreting the federal sector ADEA address disparate impact claims.

[11] Dismissal with prejudice is appropriate because Gyda cannot amend to state a cognizable claim. <u>See</u> <u>In re N.J. Title Ins. Litig.</u>, 683 F.3d 451, 462 (3d Cir. 2012).

impact on employees or a general policy that leads to a disparate impact." Smith, 544 U.S. at 241. Further, the plaintiff's burden in establishing a prima facie case goes beyond the need to show "statistical disparities." Ward's Cove Packing Co. v. Atonio, 490 U.S. 642, 656 (1989).[12] "Causation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Watson v. Fort Worth Bank Trust, 487 U.S. 977, 994 (1988).

The Amended Complaint includes no allegations that would meet the high standards for stating a disparate impact under the ADEA. Gyda has not alleged any statistical evidence or any other evidence that any policy employed by the federal defendants has a significant adverse effect on workers over 40 years of age. Rather Gyda has done little more than suggest that, in his estimation, fewer university students receive their degrees after the age of 40 than before. See, e.g., ¶ 32 (asserting that "only an infinitesimally minute fraction of all scientists holding degrees in an appropriate discipline, and who are over the age of forty, received their degrees within the stated three year window of application to the VSP").[13]

---

[12] The Civil Rights Act of 1991 did not affect disparate impact claims under the ADEA, to which the Ward's Cove standard still applies. See Smith, 544 U.S. at 240.

[13] This assertion is also implausible. On a motion to dismiss, the Court may consider external evidence on which the plaintiff's claims rely. White Consol. Indus., 998 F.2d at 1196. The Court may thus consider that the source cited for this assertion instead shows that in 2012, U.S. universities awarded 10.4% of doctorates in Life Science fields to students older than 40. See National Center for Science and Engineering Statistics, National Science Foundation, Doctorate Recipients from U.S. Universities 2012, Table 27 (www.nsf.gov/statistics/sed/2012/excel/tab27.xlsx). Because this evidence, on which the Amended Complaint purports to rely, instead contradicts the allegations, in considering a motion to dismiss the Court need not accept the allegations as true. See Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994); see also In re Livent, Inc. Noteholders Sec. Litig., 151 F. Supp. 2d 371, 406 (S.D.N.Y. 2001) (citing cases).

Gyda also does not allege facts showing the challenged VSP eligibility guideline for postgraduates "results in unfavorable treatment of a disproportionate number of members of the protected group to which the plaintiff belongs." Massarsky, 706 F.2d at 120. Gyda asserts that the VSP postgraduate application guidelines affected him, ¶ 20, but offers no evidence showing that any other, similarly situated individuals were likewise affected. See Massarsky, 706 F.2d at 120.

Most importantly, Gyda has not alleged any causation – i.e., he has not shown how the VSP eligibility guidelines for postgraduates have a demonstrable adverse impact on older workers, and this failure is "the sort of omission that could result in employers being potentially liable for the myriad of innocent causes that may lead to statistical imbalances." Smith, 544 U.S. at 241. Because Gyda has not alleged a disparate impact under the ADEA, his claims must be dismissed.

### C. The Amended Complaint does not adequately state or allege facts that plausibly would support a "disparate treatment" claim against the federal defendants.

To the extent that Gyda instead purports to allege a "disparate treatment" claim under the federal sector ADEA, the Amended Complaint must be dismissed under Rule 12(b)(6) for failure to state such a claim against the federal defendants.

To state a claim of age discrimination in hiring under a "disparate treatment" theory of the ADEA, a plaintiff must allege facts showing that: (1) he is a member of the protected class, i.e., is at least 40 years of age; (2) he applied for a position for which he is qualified; (3) he suffered an adverse employment action; and (4) a sufficiently younger person was hired, so as to permit a reasonable inference of age dis-

crimination.[14] Blasi v. Pen Argyl Area Sch. Dist., 2013 WL 6388493, *4 (E.D. Pa.

Dec. 5, 2013); Barber v. CSX Distribution Servs., 68 F.3d 694, 698 (3d Cir. 1995).

*First*, the Amended Complaint fails to allege that Gyda either applied to the

VSP or made every reasonable attempt to convey his interest in being selected for

the program to the VSP decision makers. Lula v. Network Appliance, 245 Fed.

Appx. 149, 152 (3d Cir. 2007); Blasi, 2013 WL 6388493, at *4; cf. EEOC v. Metal

Serv. Co., 892 F.2d 341, 348-49 (3d Cir. 1990). To the contrary, the Amended Com-

plaint alleges: (1) Gyda only communicated with EEO personnel, first at ORAU and

later at the FBI in Philadelphia, and (2) Gyda's communications with these EEO

personnel concerned only "what he believed was a statement of discriminatory pref-

erence," ¶ 10, not interest in being selected for the VSP. See ¶¶ 10-19, 33; Compl.

Exs. 3-6. Gyda's allegations thus fall short of showing he "applied" to the VSP so as

to state a claim under the ADEA. See Blasi, 2013 WL 6388493, at *4 (dismissing

ADEA failure to hire claim; plaintiff did not apply, and expression of interest during

telephone call was insufficient to show he made every reasonable attempt to convey

his interest in position); Lula, 245 Fed. Appx. at 153 (rejecting claim where plaintiff

neither applied nor contacted those responsible for hiring); Parker v. Univ. of Pa.,

128 Fed. Appx. 944, 946 (3d Cir. 2005) (rejecting claim where plaintiff did not apply

but instead wrote letter of complaint to employer's affirmative action office).

*Second*, the Amended Complaint does not allege facts showing that Gyda suf-

fered an adverse employment action, because it does not allege that Gyda was ever

considered for or rejected from the VSP. See Barber, 68 F.3d at 698 (plaintiff must

show that despite his qualifications he was rejected). As noted above, Gyda does not

---

[14] The Amended Complaint alleges that Gyda is over 40. ¶ 21. While the federal
defendants do not concede that Gyda's alleged experience makes him appropriate
for the VSP, the Amended Complaint alleges that he is "qualified." ¶¶ 20-23.

allege that he applied to the VSP, or was rejected from participation in the program. See Blasi, 2013 WL 6388493, at *4 n.26 ("Without an actual application, it would be hard to then find an adverse employment action."); cf. Lula v. Network Appliance, 255 Fed. Appx. 610, 611-12 (3d Cir. 2007) (no ADEA adverse employment action based on rejection of "unacceptable" job offer).

Third, because "the ADEA prohibits discrimination on the basis of age and not class membership," to state a claim of disparate treatment, Gyda must allege facts showing an actual, not a theoretical, significant disparity in age between him and a "substantially younger" individual who was selected for the VSP instead of him. O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312-13 (1996); Brewer v. Quaker State Oil Ref. Corp., 72 F.3d 326, 330 (3d Cir. 1995). But Gyda fails to allege facts regarding any postgraduates selected for the VSP – much less facts that would "raise an inference" that a similarly qualified, significantly younger individual was selected instead of him, so as to support an inference of discriminatory intent. Santiago v. Brooks Range Contract Servs., 2012 WL 1019060, *2 (E.D. Pa. Mar. 26, 2012) (dismissing complaint containing no allegation or set of facts that might show plaintiff's age played a role in a decision not to hire him, or that someone younger was hired instead); Salkin v. Temple Univ., 2007 WL 1830577, *6 (E.D. Pa. June 25, 2007) (ADEA disparate treatment claim requires comparator evidence of younger individuals treated more favorably than plaintiff).

Finally, to state a disparate treatment claim, Gyda must allege and show that his age actually motivated or determined an adverse employment decision. See Ky. Ret. Sys. v. EEOC, 554 U.S. 135, 142 (2008) (finding pension plan that included age as a factor did not violate ADEA; plaintiff failed to show differential treatment was actually motivated by age); Fasold v. Justice, 409 F.3d 178, 183-84 (3d Cir. 2005); Embrico v. U.S. Steel Corp., 404 F. Supp. 2d 802, 817 (E.D. Pa. 2005). Gyda

14

must also allege and show that his age was the "but-for" cause of the adverse action; allegations of mixed motives are insufficient. Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009). Here, the Amended Complaint merely asserts that the VSP application's three-year eligibility guideline for postgraduates is a "discriminatory preference," ¶ 20, "discrimination," ¶ 31, and "pragmatically and statistically an overwhelmingly age-biased requirement." ¶ 32. Gyda fails to allege any facts that plausibly would support finding that his age actually motivated or determined any adverse employment decision, much less that his age was the "but for" cause of an adverse action. See, e.g., Pezzoli v. Allegheny Ludlum Corp., 2010 WL 2852988, *2 (W.D. Pa. July 20, 2010) (dismissing ADEA claim where plaintiff failed to allege non-speculative, non-conclusory facts to support an inference of age discrimination as a but-for cause, and failed to assert that employer filled the position with some-one sufficiently younger than him to permit an inference of age discrimination).

In sum, because Gyda's allegations provide no basis from which the court can infer anything more than the "mere possibility" of unlawful age discrimination, any purported disparate treatment claim must be dismissed under Rule 12(b)(6).

> **D.    Gyda's ADEA claims against the federal defendants must also be dismissed for failure properly to pursue the federal court bypass and to exhaust the alternative administrative process.**

A plaintiff may bring a federal sector ADEA claim to court by either of two routes. The Amended Complaint shows that Gyda attempted to pursue both routes simultaneously, but failed to comply with the requirements of either, making this action improper and requiring its dismissal under Rule 12(b)(6).[15]

---

[15] Failure to comply with and exhaust administrative remedies is an affirmative defense, but in the Third Circuit is grounds for dismissal under Rule 12(b)(6). Robinson v. Dalton, 107 F.3d 1018, 1021-22 (3d Cir. 1997); Slingland v. Donahoe, 542 Fed. Appx. 189, 191 (3d Cir. 2013).

1.   **Gyda filed suit against the federal defendants without proper notice to the EEOC Office of Federal Operations.**

First, unlike under Title VII or the private sector ADEA, a plaintiff pursuing a claim under the federal sector ADEA may "bypass" the EEO administrative process and bring a claim directly to federal court – so long as, within 180 days of the allegedly discriminatory act, he provides the EEOC Office of Federal Operations in Washington, D.C. with written notice of his intent to sue, and then waits at least 30 days before commencing suit. See 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201; cf. 29 C.F.R. § 1614.403 (discussing other responsibilities of EEOC Office of Federal Operations). This notice requirement is strictly construed. See, e.g., McReady v. Breeden, 1991 WL 255590, * 3-4 (D.D.C. Nov. 14, 1991) (dismissing age claim where plaintiff did not provide EEOC with notice of intent to sue until after the commencement of action in federal court; rejecting argument that 30-day requirement was "minor procedural defect"); Rann v. Chao, 209 F. Supp.2d 75, 79-81 (D.D.C. 2002) (affirming dismissal of age claim against federal agency where plaintiff failed to give EEOC 30 days' advance notice at address specified in federal regulations).

a)   **Gyda did not provide the EEOC Office of Federal Operations with the required notice of intent to sue the federal defendants.**

The Amended Complaint shows that Gyda did not satisfy these prerequisites before filing suit. Gyda identifies April 16, 2013 as the most recent date of the alleged discrimination. Compl. Ex. 6. To bring an ADEA claim against the federal defendants, therefore, Gyda needed to provide written notice to the EEOC Office of Federal Operations in Washington, D.C. by October 13, 2013, i.e., 180 days later. 29 C.F.R. § 1614.201. But Gyda never alleges (and cannot show) that he provided the EEOC Office of Federal Operations with written notice of his intent to sue, nor can he show he then waited 30 days before filing suit, making this action improper.

### b) An EEOC "charge" against ORAU cannot replace the "notice" required to sue the federal defendants.

In addition to starting an untimely administrative claim against the FBI, the Amended Complaint alleges that Gyda separately attempted to pursue administrative remedies against defendant ORAU, a private entity. See ¶¶ 7, 10-13. Even if the Court finds that Gyda has alleged that he timely and properly pursued a claim against private sector ORAU, Gyda cannot rely on those allegations to state a claim against the federal defendants because the requirements and procedures that apply under the private-sector ADEA differ greatly from those that apply to the federal defendants under the federal sector ADEA.

Most importantly, under the <u>private</u> sector ADEA, before filing suit, a plaintiff alleging age discrimination is required to file a "charge" with the EEOC, specifically naming the employer (or, in the case of an applicant, potential employer) who allegedly discriminated. 29 U.S.C. § 626(d). If the EEOC does not reach a conciliation agreement with the respondent within a specified period of time, the plaintiff may bring an action "against the respondent named in the charge."[16] <u>Dreisbach v. Cummins Diesel Engines, Inc.</u>, 848 F. Supp. 593, 595 (E.D. Pa. 1994) (quoting 42 U.S.C. § 2000e–5(f)(1)); <u>Zysk v. FFE Minerals USA Inc.</u>, 225 F. Supp. 2d 482, 488 (E.D. Pa. 2001) (plaintiff alleging a private employer violated ADEA must wait 60 days after filing charge with EEOC before filing suit). Conversely, as noted above, a plaintiff alleging that a <u>federal</u> agency violated the ADEA need not exhaust his administrative remedies, but may proceed directly to federal court – so long as he provides the EEOC Office of Federal Operations with written "notice" of intent to

---

[16] Because a private sector EEOC charge does not apply to the federal defendants, the allegations that Gyda filed an EEOC charge against "FBI Lab, et al.," ¶¶ 14-15, are irrelevant. Nonetheless, these allegations are also implausible because the Amended Complaint's exhibits contradict them and show that the only respondent named in the EEOC charge was ORAU. See Compl. Ex. 5.

sue within 180 days of the alleged discrimination and at least 30 days before filing suit. 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201.

As this difference suggests, "an EEOC 'charge' and a 'notice of intent to sue' are separate and distinct administrative devices." Watson v. TVA, 867 F. Supp. 2d 1215, 1220 (N.D. Ala. 2012); see also id. at 1222 (explaining that under EEOC regulations, a "charge" should contain certain information, whereas a "notice" of intent to sue must contain certain information; explaining that a charge and notice are filed at different locations). Consequently, an ADEA plaintiff seeking to sue federal defendants may not conflate a "charge" under § 626(d) with the "notice" of intent to sue required under § 633a(d) in order to bypass the administrative procedures and sue directly in federal court. Watson, 867 F. Supp. 2d at 1220.

Thus, Gyda may not rely on his allegations that he filed a "charge" with the Philadelphia EEOC against private defendant ORAU, to excuse his failure to provide the EEOC Office of Federal Operations in Washington, D.C. with the required "notice" of intent to sue the federal defendants. See id. at 1219-25 (suing a private entity and a federal agency as "joint employers" does not exempt a plaintiff from complying with the express prerequisites to suit applicable to federal employees).

### 2. Gyda failed properly to pursue or exhaust the alternative EEO administrative process.

Under the federal sector ADEA, as an alternative to filing directly in federal court after providing the required notice to the EEOC Office of Federal Operations, a plaintiff can pursue a claim against federal defendants through the EEO administrative process and later file in district court if not satisfied with the outcome. See 29 U.S.C. § 633a(b); Galante v. Cox, 2006 WL 1371191, *4 (E.D. Pa. May 16, 2006). Gyda failed properly to pursue this alternative route in at least two ways.

### a) Gyda failed to contact an EEO counselor within 45 days of the alleged discrimination.

First, before a plaintiff can file a formal administrative EEO complaint alleging age discrimination under the federal sector ADEA, the plaintiff must first consult an EEO counselor, within 45 days of the date of the matter alleged to be discriminatory, to attempt to resolve the matter informally. 29 C.F.R. § 1614.105(a)(1).

Here, Gyda identifies April 16, 2013 as the most recent date of the alleged discrimination. Compl. Ex. 6. Thus, Gyda needed to contact an EEO counselor by May 31, 2013, i.e., 45 days later. But the Amended Complaint shows Gyda did not contact an EEO counselor until October 11, 2013, ¶ 17, i.e., 178 days after the alleged discrimination, making his claim untimely. Galante, 2006 WL 1371191, at *4.

### b) Gyda failed to exhaust the alternative administrative process before filing this action.

Second, even had Gyda timely contacted an EEO counselor, this action would still be improper because Gyda filed in district court without first exhausting the federal sector administrative process. The Third Circuit has held that once a plaintiff elects to pursue his ADEA administrative remedies, he must complete the process before filing a complaint in federal court. Purtill v. Harris, 658 F.2d 134, 138 (3d Cir. 1981) ("Allowing a plaintiff to abandon the administrative remedies he has initiated would tend to frustrate the ability of the agency to deal with complaints. All participants would know that at any moment an impatient complainant could take his claim to court and abort the administrative proceedings."); Slingland, 542 Fed. Appx. at 193; Estacio v. Potter, 2008 WL 356478, *5 (E.D. Pa. Feb. 6, 2008); Elsberry v. Rice, 820 F. Supp. 824, 830 (D. Del. 1993) ("the law in this Circuit requires plaintiff to exhaust his administrative remedies and does not permit him to abandon those remedies mid-stream in search of relief in federal district court.").

Here, the Amended Complaint alleges that Gyda invoked the federal administrative EEO process on October 11, 2013, when he "initiated a formal complaint process" with an EEO counselor at the FBI in Philadelphia. ¶ 17. On November 26, 2013, the FBI Counselor notified Gyda of his right to file a formal discrimination complaint with the FBI EEO in Washington, D.C.[17] ¶ 18; Compl. Ex. 6. Gyda then filed a formal discrimination complaint on December 7, 2013. ¶ 19; Compl. Ex. 6. But only 17 days later, Gyda also then filed this action in district court on December 24, 2013. See ECF No. 1.

Consequently, even if the Court finds that Gyda timely pursued his ADEA claim via the alternative administrative route, it must also find that Gyda failed to exhaust the federal EEO administrative process before filing in district court, making this action improper and requiring its dismissal under Rule 12(b)(6). See Galante, 2006 WL 1371191, at *4; Rodriguez v. USPS, 2005 WL 486610, *5 (E.D. Pa. Mar. 1, 2005) (dismissing ADEA claim because plaintiff failed to allege that he met administrative preconditions to filing in federal court).

### E.   Gyda's demands for a jury and various damages are improper and must be stricken from any claim permitted to proceed.

The Amended Complaint includes demands for a jury trial, compensatory damages, liquidated damages, non-economic damages, punitive damages, and attorneys' fees – none of which are available in an ADEA claim against the federal government or its agencies. See, e.g., Lehman, 453 U.S. at 162 (no jury trial for federal sector ADEA claim); Steward v. Sears Roebuck & Co., 312 F. Supp. 2d 719, 730 (E.D. Pa. 2004) (no punitive damages recoverable under the ADEA); Ahlmeyer v. Nev. Sys. of Higher Educ., 555 F.3d 1051, 1059 (9th Cir. 2009) (no compensatory

---

[17] If the counselor does not resolve the matter, he must inform the plaintiff in writing of the right to file a formal administrative complaint. 29 C.F.R. § 1614.105(d). The plaintiff must then file his formal administrative complaint within 15 days. Id.

or punitive damages available under the ADEA); <u>Villescas v. Abraham</u>, 311 F.3d 1253, 1261 (10th Cir. 2002) (no compensatory damages recoverable against the federal government under ADEA); <u>Palmer v. GSA</u>, 787 F.2d 300, 302 (8th Cir. 1986) (no award of attorneys' fees available under federal sector ADEA); <u>Miller v. Kerry</u>, 924 F. Supp. 2d 133, 139 (D.D.C. 2013) ("§ 633a does not grant federal employees the full scope of rights accorded to private, state, and local employees resulting in restrictions on the right to a jury trial, liquidated damages, and recovery of attorneys' fees."); <u>Walker v. U.S. Dep't of Commerce</u>, 2012 WL 1424495, *6-7 (E.D. Cal. Apr. 24, 2012) (no jury trial and no punitive, compensatory, or liquidated damages available in ADEA claim against federal defendants); <u>Mitchell v. Chao</u>, 358 F. Supp. 2d 106, 114 (N.D.N.Y. 2005) (no liquidated damages under federal sector ADEA, even if such damages were authorized under private sector provisions); <u>Rattner v. Bennett</u>, 701 F. Supp. 7, 9 (D.D.C. 1988) (no punitive, compensatory, or liquidated damages available under federal sector ADEA).

Consequently, should the Court permit any claim in the Amended Complaint to proceed against the federal defendants, or permit Gyda to replead to state a cognizable claim against the federal defendants, Gyda nonetheless may neither demand a jury trial nor pursue any purported claims for compensatory damages, liquidated damages, non-economic damages, punitive damages, attorneys' fees, or any other impermissible relief, against the federal defendants.

## V.    Conclusion

For the foregoing reasons, the federal defendants respectfully request that the Court dismiss all claims against the federal defendants with prejudice.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


MARGARET L. HUTCHINSON
Assistant United States Attorney
Chief, Civil Division


MARK J. SHERER
Assistant United States Attorney
615 Chestnut St., Suite 1250
Philadelphia, PA 19106
(215) 861-8445
mark.sherer@usdoj.gov

Dated: June 27, 2014

## CERTIFICATE OF SERVICE

I certify that on June 27, 2014, the foregoing "Motion to Dismiss the Amended Complaint by Federal Defendants," and memorandum in support, were filed electronically and are available for viewing and downloading from the court's ECF system, and a copy was forwarded by first class U.S. mail, postage pre-paid, to:

Michael Gyda
3830 Marshall Road
Drexel Hill, PA  19026

*Pro Se Plaintiff*

MARK J. SHERER
Assistant United States Attorney

## NOTICE REGARDING LOCAL CIVIL RULE 7.1(c)

Federal defendants, through their counsel the United States Attorney's Office for the Eastern District of Pennsylvania, have filed a Motion to Dismiss Plaintiff's Amended Complaint and have served the motion on Plaintiff via the court's ECF system and U.S. Mail. Under Rule 7.1(c) of the Local Rules of Civil Procedure, any memorandum in opposition to the federal defendants' motion is due within fourteen (14) days after June 27, 2014. If no responsive brief is filed with the Court and served on the federal defendants within that time period, the Court may grant the motion as uncontested and dismiss the action with prejudice. See, e.g., Long v. Borough of Downingtown, 2014 WL 2158399, *2 (E.D. Pa. May 23, 2014); Celestial Cmty. Dev. Corp. v. City of Phila., 901 F. Supp. 2d 566, 578 (E.D. Pa. 2012).