IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL GYDA, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| FEDERAL BUREAU OF INVESTIGATION | : | |
| CRIME LABORATORY; UNITED STATES | : | |
| DEPARTMENT OF ENERGY OFFICE OF | : | |
| SCIENCE; OAK RIDGE INSTITUTE FOR | : | |
| SCIENCE AND EDUCATION; and OAK | : | |
| RIDGE ASSOCIATED UNIVERSITIES | : | No. 13-7591 |

**MEMORANDUM**

**NORMA L. SHAPIRO, J.**                                                                                                    **JULY 6, 2015**

  Pro se plaintiff Michael Gyda ("Gyda") alleges that a Visiting Scientist Program at the Federal Bureau of Investigation Crime Laboratory ("FBI Crime Lab") violates the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, by discriminating unlawfully against applicants over the age of forty. The Visiting Scientist Program requires an eligible post-graduate applicant to have received a doctorate within five years of his or her intended start date. Gyda has filed suit against various federal defendants—the FBI Crime Lab, the United States Department of Energy Office of Science, and the Oak Ridge Institute for Science and Education (collectively, the "federal defendants")—and the private consortium Oak Ridge Associated Universities.

  The federal defendants and Oak Ridge Associated Universities have moved to dismiss Gyda's Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). Gyda fails to state claims under the ADEA and the motions to dismiss will be granted.

I.  **FACTUAL BACKGROUND**

Gyda is 55 years old and received a Ph.D. in Cell, Molecular, and Developmental Biology in 2007. Am. Compl. ¶ 21. He has fifteen years of adjunct faculty experience in Philadelphia-area schools. Am. Compl. ¶ 23. He has attempted unsuccessfully to secure positions in state crime laboratories and to acquire environmental laboratories. Am. Compl. ¶¶ 26, 29.

On or about April 13, 2013, Gyda first learned of the Visiting Scientist Program ("VSP") at the FBI Laboratory in Quantico, Virginia. Am. Compl. ¶ 25. The fellowship program is designed to provide participants—including eligible students, post-graduates, and faculty—an opportunity to engage in forensic science research initiatives and further their scientific careers. Am. Compl. Ex. 1. According to the VSP's guidelines, to be eligible for the program a post-graduate applicant must have received a post-graduate degree within five years of his or her intended start date (the "eligibility requirement").[1] Am. Compl. Ex. 1. Gyda graduated at least six years prior to his intended start date in 2013 and does not meet the VSP's eligibility requirement. Am. Compl. ¶ 21.

The VSP is provided in cooperation with Oak Ridge Associated Universities ("ORAU"), a private consortium of universities and non-governmental contractor for the Department of Energy. Am. Compl. Ex. 1; Am. Compl. ¶ 7; Tr. at 4. The program is administered by the Oak Ridge Institute for Science and Education ("ORISE"), a U.S. Department of Energy agency. Am. Compl. Ex. 1; Am. Compl. ¶ 6; Tr. at 3-4.

---

[1] Both the Amended Complaint and certain VSP materials refer to a three-year time frame. The federal defendants concede that the eligibility period for post-graduate applicants is in fact five years. Fed. Br. at 3. Because Gyda alleges he graduated six years before his intended start date, the discrepancy is immaterial.

Procedural history

In April 2013, Gyda contacted personnel in ORAU's Equal Employment Opportunity ("EEO") office to complain about the eligibility requirement.  Am. Compl. ¶¶ 10-12; Am. Compl. Ex. 3.  On September 5, 2013, Gyda, alleging age discrimination in connection with the VSP selection process, filed a charge against ORAU with the Equal Employment Opportunity Commission ("EEOC") in Philadelphia.  Am. Compl. ¶ 14.  On September 24, 2013, the EEOC dismissed Gyda's charge and informed him of his right to file a district court action against ORAU.  Am. Compl. ¶ 15; Am. Compl. Ex. 5.

On October 11, 2013, Gyda contacted an EEO counselor at the FBI's Philadelphia Field Office.  Am. Compl. ¶ 17; Am. Compl. Ex. 6.  On November 26, 2013, the counselor informed Gyda of his right to file a formal complaint.  Am. Compl. ¶ 18; Am. Compl. Ex. 6.  On December 7, 2013, Gyda filed a formal complaint with the FBI's EEO office in Washington, D.C.  Am. Compl. ¶ 19; Am. Compl. Ex. 6.  Seventeen days later, he initiated this action.

The federal defendants argue that Gyda's procedural approach was improper in two ways.  First, he failed to adhere to the Code of Federal Regulations by not giving the FBI's EEO office written notice of intent to sue and timely contacting an EEO counselor.  29 C.F.R. § 1614.105(a)(1); 29 C.F.R. § 1614.201; Fed. Br. at 16-19.  Second, he failed to exhaust the EEO administrative process by bringing this action seventeen days after filing a formal complaint with the FBI's EEO office.  Fed. Br. at 19-20.  In response, Gyda argues that ORAU's EEO office failed to give him prompt and accurate guidance on administrative protocol.  Response to Fed. Motion to Dismiss at 17.

## II. DISCUSSION

Gyda alleges the VSP's eligibility requirement violates the ADEA and attempts to assert "disparate impact" and "disparate treatment" claims against ORAU and the federal defendants. He fails to state plausible claims under the ADEA.

<u>Standard</u>

To determine the sufficiency of a complaint, a court must identify the elements of each claim at issue, *see Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010), disregard all conclusory allegations or "naked assertions devoid of further factual enhancement," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and assume the veracity of all well-pleaded factual allegations and then determine whether they plausibly give rise to entitlement for relief. *Iqbal*, 556 U.S. at 679.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 678 (internal quotations omitted).

<u>The Age Discrimination in Employment Act ("ADEA")</u>

The Age Discrimination in Employment Act ("ADEA") has distinct statutory schemes for private sector employers and for employers in the federal government. 29 U.S.C. § 623(a)(2) proscribes age discrimination by private sector employers and bars them from "depriv[ing] any individual of employment opportunities or otherwise adversely affect[ing] his status as an employee because of such individual's age . . ." 29 U.S.C. § 623(a)(2) (the "private sector

ADEA"). Enacted after Section 623(a), 29 U.S.C. § 633a applies specifically to federal employers, including executive agencies, and provides that "personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . shall be made free from any discrimination based on age." 29 U.S.C. § 633a(a) (the "federal sector ADEA"). Because of this statutory divide, Gyda's claims against the federal defendants—the FBI Crime Lab, the United States Department of Energy Office of Science, and ORISE—are governed by Section 633a, the federal sector ADEA. His claims against ORAU are governed by Section 623a, the private sector ADEA.

Disparate impact claim

Gyda asserts "disparate impact" claims against both the federal defendants and ORAU based on the VSP eligibility requirement. Disparate impact claims "involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993). Gyda alleges the eligibility requirement has a disparate impact on applicants over the age of forty.

The federal defendants contend that disparate impact claims are not actionable under the federal sector ADEA. They argue Gyda's disparate impact claim against them must be dismissed for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Fed. Br. at 6-8. ORAU does not dispute that disparate impact claims are actionable under the private sector ADEA.

The United States Supreme Court and the United States Court of Appeals for the Third Circuit have not decided whether disparate impact claims may be brought under the federal sector ADEA. This court declines to address that question.

Even if disparate impact claims were actionable under the federal sector ADEA, Gyda would fail to state a plausible disparate impact claim under either the federal sector ADEA or the private sector ADEA. "To establish [a] prima facie case of discriminatory impact, [a] plaintiff must show that the employer's selection process results in unfavorable treatment of a disproportionate number of members of the protected group to which the plaintiff belongs." *Massarsky v. Gen. Motors Corp.*, 706 F.2d 111, 120 (3d Cir. 1983). "[C]ausation must be proved; that is, the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." *Watson v. Fort Worth Bank and Trust*, 487 U.S. 977, 994 (1988). A plaintiff must "show that other similarly situated employees were likewise affected. An adverse effect on a single employee, or even a few employees, is not sufficient to establish disparate impact." *Massarsky*, 706 F.2d at 121.

To support his disparate impact claim, Gyda makes the following conclusory allegation: "[O]nly an infinitesimally minute fraction of all scientists holding degrees in an appropriate discipline, and who are over the age of forty, received their degrees within the [requisite five-year] window of application to the VSP." Am. Compl. ¶ 32. Gyda provides no statistical support for this proposition, but cites various sources, including the U.S. Department of Education and National Center for Education Statistics, among others.

According to National Center for Science and Engineering Statistics, U.S. universities awarded 10.4 percent of doctorates in Life Science fields to students over forty in 2012.[2] This statistic and similar publicly available data do not show that applicants to the VSP over the age of forty are necessarily disadvantaged by its eligibility requirement. For any post-graduate applicant, the requirement turns on the length of time between receiving a doctorate and applying to the VSP. Post-graduate applicants over the age of forty may still comply with the requirement by timely applying for the program—no more than five years after receiving their degrees.

Not only does Gyda fail to adduce statistical evidence in support of his disparate impact claim, he also fails to allege that other similarly situated applicants—namely, applicants over the age of forty—were negatively affected by the eligibility requirement. Gyda received his doctorate approximately six years before his intended start date. Even among applicants over forty, Gyda's circumstances may be anomalous. Gyda does not plead facts sufficient to show they are not. He fails to state a plausible disparate impact claim against ORAU and the federal defendants.

<u>Disparate treatment claim</u>

Gyda asserts claims of "disparate treatment" against both the federal defendants and ORAU. The defendants do not dispute that disparate treatment claims are actionable under both the federal sector and the private sector ADEA. Rather, they argue Gyda fails to state a plausible disparate treatment claim under Federal Rule of Civil Procedure 12(b)(6).

To state a claim of age discrimination by disparate treatment, a plaintiff must show that: (1) he is a member of the protected class (*i.e.* at least forty years old); (2) he applied for a position for which he is qualified; (3) his application was rejected; and (4) the rejection was motivated by

---

[2]On a motion to dismiss, courts may consider matters of public record. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

discriminatory animus. *Barber v. CSX Distrib. Serv.*, 68 F.3d 694, 698 (3d Cir. 1995). The hiring of a sufficiently younger person permits the inference that discriminatory animus motivated the decision. *Id.* "To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Serv., Inc.*, 557 U.S. 167, 176 (2009).

Ineligible for the VSP, Gyda does not allege he ever formally applied for the program.[3] Nor does he allege his candidacy was ever rejected. Compounding those deficiencies, Gyda's amended complaint fails to allege discriminatory animus plausibly, namely, that age—and not other considerations, such as familiarity with learned subject matter—motivated the VSP's eligibility requirement. For example, Gyda does not allege a younger applicant was hired instead of him. The VSP may in fact have chosen an applicant over the age of forty who complied with its eligibility requirement.

ORAU's EEO office maintained that "[t]he criterion regarding the 5-year restriction is not in any way a function of a person's age." Am. Compl. Ex. 4. Gyda does not plead facts sufficient to suggest otherwise. He fails to state a plausible disparate treatment claim against ORAU and the federal defendants.

### III.  CONCLUSION

Gyda fails to state claims against ORAU and the federal defendants under the ADEA and this action will be dismissed. An appropriate Order follows.

---

[3]Gyda concedes he never submitted a formal application to the VSP, but alleges he "made telephone calls" and "sent e-mails." Tr. at 38.